UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNIFER G.,

                                    Plaintiff,

v.                                                      5:22-CV-00996
                                                         (MAD/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:


OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
  *Attorneys for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.          FERGUS J. KAISER, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge


## **REPORT-RECOMMENDATION**

Plaintiff Jennifer G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying her application for Supplemental Security Income ("SSI"). (Dkt.

No. 1.)  This matter was referred to me for Report and Recommendation by the Honorable Mae

A. D'Agostino, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 8.)  This case has proceeded in accordance with General Order 18.

Currently before this court are Plaintiff's motion for judgment on the pleadings and Defendant's

motion for judgment on the pleadings. (Dkt. Nos. 10, 12, 13.)  For the reasons set forth below,

this court recommends that the District Court grant Plaintiff's motion for judgment on the

pleadings, deny Defendant's motion for judgment on the pleadings, and remand the

Commissioner's decision for further administrative proceedings.

## I.    PROCEDURAL HISTORY

On March 2, 2020, Plaintiff protectively filed an application for SSI, alleging disability

dating from April 24, 2019. (Administrative Transcript ("T.") 222-228.)  Her application was

denied initially on January 5, 2021, and her request for administrative reconsideration was

denied on April 6, 2021. (T. 88-109, 110-132.)  Plaintiff's request for a hearing was granted. (T.

150-152, 187-191.)  On October 21, 2021, Plaintiff and vocational expert ("VE") Whitney Eng

testified by telephone before Administrative Law Judge ("ALJ") Jennifer Gale Smith. (T. 38-69.)

The ALJ issued an unfavorable decision on November 1, 2021. (T. 8-27.)  The Appeals Council

denied Plaintiff's request for review on July 26, 2022. (T. 1-7.)

Plaintiff commenced this proceeding on September 21, 2022 to challenge the

Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

B.    **Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)
and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.    **FACTS**

As of the date of the ALJ's decision, Plaintiff was 35 years old. (T. 43, 222.) Plaintiff is

a high school graduate who had received special education assistance due to learning difficulties,

particularly with math. (T. 43, 244, 738.) At her October 21, 2021 hearing, Plaintiff testified that

she and her twelve year old son resided with her parents. (T. 44.) She has a very limited work

history that includes part-time employment at a children's daycare center and positions as a

hospital aide, sales associate, and retail stock person. (T. 244, 291.) Plaintiff reported that she

had not worked since 2009 due to her mental health impairments. (T. 738.)

Plaintiff's psychiatric treatment history dated back to 2012 but testified that she first

experienced symptoms of depression and anxiety at age eighteen. (T. 55, 738, 964.) In October

2019, she was briefly hospitalized after her mother discovered social media posts suggesting that

Plaintiff intended to harm herself. (T. 1193.) Plaintiff testified that her psychiatric impairments

made it difficult to get out of bed during the day to perform routine tasks, such as grocery

shopping, getting her son ready for school, and performing household chores without assistance

from her mother. (T. 46-48, 740.) She reported that her psychiatric medication reduced her

anxiety and depression symptoms but she still had regular thoughts of self-harm. (T. 988, 1015.)

With regard to physical symptoms, Plaintiff reported longstanding lower back pain that radiated down to her left leg and was exacerbated by walking and other physical activity. (T. 733. 795.)  She also reported lingering pelvic pain despite multiple surgeries to remove scar tissue associated with endometriosis. (T. 55-56.)  Her most recent surgery was in April 2019. (T. 1401-1402.)

The record includes Plaintiff's relevant medical and psychiatric treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    **THE ALJ'S DECISION**

Based upon her review of the administrative record, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the application date of March 2, 2020. (T. 13.)  At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, fibromyalgia, obesity, a depressive disorder, an anxiety disorder, borderline personality disorder and a learning disability." (T. 13-14.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (disorders of the skeletal spine resulting in compromise of nerve roots), Listing 12.04 (Depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), and Listing 12.08 (personality and impulse-control disorders). (T. 14-16.)  Next, the ALJ found that Plaintiff could physically perform less than the full range of light work and had certain non-exertional limitations related to her mental health. (T. 16-20.)  Specifically, the ALJ found that Plaintiff:

is unable to climb ladders/ropes/scaffolds, work at unprotected heights or work in close proximity to dangerous machinery or moving mechanical parts of equipment. She can occasionally climb ramps/stairs, balance, knee[l], crouch, crawl and stoop. The claimant can occasionally reach overhead, and she can frequently reach in all other directions. She is limited to simple, routine and repetitive tasks. She requires a low stress job, defined as occasional changes in the work setting. The claimant is limited to goal-oriented work rather than production-pace-rate work. Finally, she can have occasional contact with supervisors, coworkers and the public.

(T. 16.)

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 17.) The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c. (*Id.*) The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found them "not entirely consistent with the medical evidence and other evidence in the record . . ." (T. 18.)

At step four, the ALJ found that Plaintiff had no past relevant work. (T. 20.) Relying on the VE testimony, the ALJ next found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 20-21.) Accordingly, the ALJ found that Plaintiff had not been disabled from the March 2, 2020 application date through the date of the ALJ's decision. (T. 21.)

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the mental health opinion evidence and failed to properly consider Plaintiff's subjective complaints of physical

pain, resulting in an RFC determination that is not supported by substantial evidence. (Dkt. No. 10 at 5-10, Dkt. No. 13 at 1-2.)  The Commissioner contends that the ALJ's analysis of the medical opinion evidence, Plaintiff's testimony, and the ultimate disability determination were supported by substantial evidence. (Dkt. No. 12 at 9-16.)  For the following reasons, this court agrees with Plaintiff that the ALJ's disability determination was not supported by substantial evidence and recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand for further administrative proceedings.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.

*See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.     Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors:

---

[2] Plaintiff's application was protectively filed on March 2, 2020. (T. 222-228).  Thus, the new regulations apply in this case.

supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical

opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

**B.    The ALJ Failed to Properly Evaluate the Persuasiveness of the Mental Health Opinions.**

As part of her evaluation of Plaintiff's mental RFC, the ALJ considered the opinions of Dr. A. Chapman and Dr. E. Kamin, state agency consultants who reviewed Plaintiff's then-current psychiatric records. (T. 17-19, 95-96, 101-105, 118-119, 125-128.)  On January 4, 2021, Dr. Chapman opined that Plaintiff had "the sustained capacity to meet the basic mental demands of competitive, remunerative, unskilled work including the ability to: understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (T. 96.)  Addressing social interaction, Dr. Chapman opined that Plaintiff had no more than moderate limitations in several areas: interacting with the general public; accepting instruction and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintaining socially appropriate behavior. (T. 103-104.)  With regard to adaptation, Dr. Chapman opined that Plaintiff had moderate limitations in her ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (T. 104-105.)  The opinion included a limited narrative identifying records that Dr. Chapman deemed relevant to assessing Plaintiff's RFC, including hospital records related to a November 2019 suicidal episode, multiple mental status examinations during visits with her primary care provider, and the November 24, 2020 psychiatric consultative examination. (T. 95-96.)

In response to Plaintiff's request for reconsideration, Dr. Kamin reviewed the updated medical record and agreed with Dr. Chapman's opinion on March 29, 2021. (T. 110-119.)  The ALJ deemed both state agency consultants' opinions to be "consistent with other records that describe an appropriate affect, appropriate behavior, good rapport, intact thought processes, intact memory and good concentration." (T. 17-18.)  She also found the non-examining opinions to be consistent with records describing Plaintiff as having an "appropriate" or "normal" mood, normal interactions, good eye contact, and intact attention and concentration. (T. 17-18.)  Based on this consistency and the consultants' "program and professional expertise," the ALJ found the opinions of Dr. Chapman and Dr. Kamin to be persuasive. (T. 18.)

Dr. Dennis Noia performed a consultative psychiatric examination of Plaintiff on November 24, 2020. (T. 738-742.)  Prior to the examination, Plaintiff reported symptoms of depression and anxiety including dysphoric mood, fatigue, loss of energy, hopelessness, irritability, low self-esteem, difficulty concentrating, excessive worry, and suicidal ideation. (T. 738-739.)  During the examination, Dr. Noia observed Plaintiff to have a cooperative demeanor with adequate social skills. (T. 739.)  She displayed coherent thought processes but appeared slightly depressed and anxious. (*Id.*)  Dr. Noia opined that Plaintiff had intact attention and concentration, despite an inability to do "serial 7s or 3s because of poor arithmetic skills."[3] (T. 740.)  He also opined that Plaintiff had "relatively intact" recent and remote memory, but below

---

[3] "Serial sevens" is a cognitive test that typically requires the patient to start at 100 and count down by repeatedly subtracting 7 (100 . . 93 . . .86, etc.).  "Serial threes" follows a similar pattern.  *See Bey v. Comm'r of Soc. Sec.*, 21-CV-7832 (KHP),  2023 WL 1098183, at *2 (S.D.N.Y. January 30, 2023) (summarizing test); *see also* George Newman, How to Assess Mental Status, MERCK manual, updated August 2023, *available at* https://www.merckmanuals.com/professional/neurologic-disorders/neurologic-examination/how-to-assess-mental-status [https://perma.cc/D2EL-ALCP].

average intellectual functioning. (*Id*.)

Based on his examination findings, Dr. Noia opined that Plaintiff showed no limitations with regard to understanding, remembering, and applying simple or complex directions and instructions; as well as mild limitations in the use of reason and/or judgment to make work-related decisions and interact adequately with supervisors, coworkers, and the public. (T. 740.) He found no evidence of limitations in Plaintiff's ability to sustain concentration or perform tasks at a consistent pace but did find mild limitations in sustaining an ordinary routine and regular attendance at work. (*Id*.)

Dr. Noia further opined that Plaintiff had "moderate to marked" limitations with regard to regulating emotions, controlling behaviors, and maintaining well-being. (T. 741.) In Dr. Noia's opinion, the results of his examination "appear to be consistent with psychiatric problems and this may at times significantly interfere with the claimant's ability to function on a daily basis." (*Id*.) The ALJ found Dr. Noia's opinion to be "somewhat persuasive" because it was "consistent with other records that describe a normal mood, a normal affect, intact attention and intact concentration," along with an appropriate mood and affect. (T. 19.) The ALJ discounted Dr. Noia's opinion regarding Plaintiff's ability to regulate her emotions, control her behavior, and maintain her well-being because she found the "moderate to marked" description to be "somewhat vague" and lacking a function-by-function analysis. (*Id*.)

The ALJ also considered the September 21, 2021 opinion of Psychiatric Mental Health Nurse Practitioner ("PMHNP") Patricia Leone. (T. 19, 1212-1214.) Plaintiff had seen PMHNP Leone on a monthly basis since July 2019, and attended weekly therapy sessions with a counselor at the same practice. (T. 738, 1214.) Utilizing a check-box form, PMHNP Leone opined that Plaintiff had "extreme" limitations in a number of areas: maintaining attention and

concentration for tasks; making simple work-related decisions; functioning in a work setting at a consistent pace; and managing her own schedule and demonstrating reliability. (T. 1213.) She further opined that Plaintiff had "marked" limitations in a number of other areas: understanding, remembering, and carrying out simple instructions; managing stress appropriately; interacting appropriately with others; relating to authority figures; maintaining socially appropriate behavior; and maintaining basic standards of personal hygiene. (*Id.*)

In a short narrative explaining her opinion, PMNHP Leone noted Plaintiff's diagnosed depression, panic disorder, bipolar disorder and borderline personality disorder. (T. 1214.) She also identified associated symptoms including panic attacks, mood swings, impulsivity and recklessness, periods of irritability, low self-esteem, difficulties recognizing emotions, problems with focus and concentration, and incidents of "self-harm behavior." (*Id.*) The ALJ found PMHNP Leone's opinion to be "less persuasive" because she deemed it "not consistent with records that consistently show intact attention, concentration and memory," and inconsistent with records depicting Plaintiff as "cooperative with an appropriate mood and affect." (T. 19, 758, 1200, 1216, 1219, 1225.) The ALJ also found the highly restrictive opinion to be inconsistent with Plaintiff's lack of in-patient treatment and the scope of her activities of daily living, and further found that PMHNP Leone did not have the professional expertise of the psychological consultants or the consulting psychiatric examiner. (*Id.*)

"At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021). An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is

procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v. Kijakazi,* No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, the Second Circuit has recently clarified that an ALJ's procedural error in failing to explain how he or she "considered the supportability and consistency of medical opinions in the record" does not necessarily preclude affirmance of the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* decision explained, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Id*., 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John L.M. v. Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec*., No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

It is well-established that an ALJ may not generally assert that an opinion is "consistent with" or "supported by" the record, without further elaboration. *See, e.g., Melissa S. v. Comm'r Soc. Sec*., No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true."); *Kathleen A. v. Comm'r of Soc. Sec. Admin*., No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022) ("[I]t is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision.").

Here, the ALJ's decision explained her analysis of each medical opinion's consistency with portions of Plaintiff's medical records. (T. 17-19.)  Still, Plaintiff contends that this analysis is flawed, and merits remand, because the ALJ failed to appropriately evaluate the consistency between the "moderate to marked" limitations described by Dr. Noia and the marked and extreme limitations in PMHNP Leone's opinion. (Dkt. No. 10 at 6.)  This court agrees, and further finds that the ALJ compounded its error by failing to consider the consistency of the opinions from Dr. Chapman and Dr. Kamin with subsequent psychiatric treatment notes and the later mental health opinion from PMHNP Leone.  Accordingly, this court recommends remand for further evaluation of the mental health opinion evidence.

The courts in this Circuit have recognized that an ALJ should not consider the persuasiveness of each medical opinion "in a vacuum," but must adequately account for the consistency of the various opinions with each other.  *See Mallorie M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-891 (MAD/ATB), 2022 WL 19078137, at *12 (N.D.N.Y. December 22, 2022) (collecting cases), *rep. rec. adopted*, 2023 WL 2563209 (N.D.N.Y. March 17, 2023); *Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651 (GRJ), 2022 WL 683034, at *8 (S.D.N.Y. March 8, 2022) ("... in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of sustained work activity."); *see also Gary F. v. Comm'r of Soc. Sec.*, 2022 WL 16540354, at *3 (W.D.N.Y. October 28, 2022) (finding ALJ erred when he "did not even acknowledge the substantial similarities between" two opinions).

Here, the ALJ rejected Dr. Noia's opinion that Plaintiff had "moderate to marked" limitations in regulating emotions, controlling behaviors, and maintaining well-being without

16

giving any apparent consideration to its consistency with PMHNP Leone's description of Plaintiff's regular irritability, mood swings, and repeated instances of actual or threatened self-harm. (T. 741, 1214.)  The ALJ further erred by finding the non-examining psychological consultants' opinions to be persuasive, without any comparison to PMHNP Leone's treating source opinion or contemporaneous treatment notes.  *See Jesse R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1220 (CFH), 2022 WL 813918, at *10 (N.D.N.Y. March 17, 2022) (remanding, in part, due to ALJ's failure to consider consistency of non-reviewing consultant's opinion with more recent mental health assessments); *Tammy T. v. Kijakazi*, No. 5:21-CV-1, 2022 WL 71995, at *13, 15 (D. Vt. Jan. 7, 2022) ("[E]ven under the new regulations, the consistency of the state agency consultants' opinions with observations of the treating sources remains an important factor.... [and] neither the ALJ nor the state agency physicians meaningfully engaged with these treatment notes[.]").

Consistent with the Second Circuit's instruction in *Loucks*, this court has conducted a "searching review" of the record, and still recommends remand.  To begin with, the ALJ's decision contains no discussion at all of the treatment notes from PMHNP Leone's monthly appointments with Plaintiff or the treatment notes from Plaintiff's weekly counseling sessions at the same practice. (T. 1074-1190.)  These notes document Plaintiff's continued complaints of depressive symptoms and suicidal ideation despite compliant use of her prescribed psychiatric medication. (T. 1015, 1076, 1083, 1089, 1097, 1105, 1415.)  Such notes would appear consistent with the more restrictive opinions from Dr. Noia and PMHNP Leone, but the ALJ's analysis omits them entirely.

Instead, the ALJ cites "normal" mental status examinations that occurred in other clinical contexts, including appointments with her primary care physician and specialists for evaluation

of non-psychiatric issues including chest pain, headaches, back pain, and pelvic pain. (T. 18-19, 900, 1216, 1219, 1225, 1362.)  The record does not suggest that any of these evaluators had any obvious mental health specialization.  One of these evaluations was conducted by telephone. (T. 1216.)  The ALJ did cite a November 2019 psychiatric evaluation showing intact attention, concentration, and memory, but failed to note the evaluation occurred after Plaintiff was taken to a hospital emergency room by police after posting suicidal statements on social media, or that Plaintiff exhibited other symptoms of depression and anxiety during the evaluation. (T. 1191-1202.)

The ALJ's decision does not explain why she relied on these evaluations in place of those of Plaintiff's long-term mental health providers, but the omission cannot be considered harmless error.  Even under the amended regulations governing medical opinion evidence, district courts in the Second Circuit recognize the "foundational nature" of regular direct observation of a patient, and "consistency with those observations" is a factor in evaluating the value of a medical opinion.  *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vermont July 14, 2020).  The importance of the longitudinal record is paramount in cases involving psychiatric impairments.  "Mental health patients have good days and bad days; they 'may respond to different stressors that are not always active.'"  *Pagan v. Saul*, No. 18-CV-7012 (JGK), 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020) (citation omitted).  "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (citations omitted).

In addition to omitting any discussion of potentially relevant mental health treatment notes, the ALJ cited Plaintiff's daily activities and her cooperative demeanor during medical appointments as reasons to discount the restrictive opinions of Dr. Noia and PMHNP Leone. (T. 19.)  This approach, without more, is questionable, and fails to provide substantial evidence for the ALJ's conclusions.  *See Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. September 6, 2022) (". . . relying on attendance at medical appointments is unhelpful in determining whether an individual with significant psychiatric issues can consistently show up and successfully function in a work environment."); *Flynn v. Comm'r of Soc. Sec. Adm*., 729 F. App'x 119, 120 (2d Cir. 2018) (finding ALJ improperly substituted his lay expertise when he discounted treating source opinions due to treatment notes showing plaintiff appeared "well-groomed" with a "calm affect" at medical appointments); *Mallery v. Berryhill*, No. 3:17-CV-587 (DEP), 2018 WL 1033284, at *4 (N.D.N.Y. February 22, 2018) (finding activities of daily living form "a very weak basis" for discounting or rejecting a treating source opinion); *Miller v. Colvin*, 122 F.Supp.3d 23, 29 (W.D.N.Y. 2015) (finding the ALJ erred by failing to explain how the plaintiff's limited activities of daily living translated to the ability to perform substantial gainful work in a typical competitive workplace environment, where the treating psychiatrist opined that plaintiff was seriously limited in his ability to follow work rules, relate to co-workers, use judgment, deal with work stresses, maintain attention and concentration, and interact appropriately with supervisors). Without greater explanation by the ALJ, such reliance appears particularly questionable in light of the evidence that Plaintiff relied heavily on her mother to meet her child care responsibilities and perform other daily activities such as shopping or household chores. (T. 19, 45-46, 50-51, 1159, 1451.)

The ALJ thus committed remandable error by failing to "meaningfully discuss" the consistency of the opinions from Dr. Noia and PMHNP Leone with other medical evidence, particularly the most recent mental health treatment notes. *See Thomas C.W. v. Kijakazi*, No. 8:21-CV-01198 (AMN), 2023 WL 2742294, at *10 (N.D.N.Y. March 31, 2023). The ALJ's apparent lack of consideration of PMHNP Leone's opinion and the associated treatment notes also calls into question her evaluation of the persuasiveness of the non-examining consultant opinions from Dr. Chapman and Dr. Kamin. *See Danette Z. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1273 (ATB), 2020 WL 6700310, at *8 (N.D.N.Y. November 13, 2020) (remanding, in part, due to non-examining consultant's inability to review later treating source opinion); *Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *8 (remanding where ALJ relied upon opinion of non-examining consultant who had no opportunity to review treating source opinions that described greater restrictions). These errors prevent this court from confidently concluding that the ALJ's evaluation of the persuasiveness of the relevant mental health opinions is supported by substantial evidence.

Accordingly, this court recommends remand to allow the ALJ to explain the supportability and consistency factors more fully with regard to the mental health opinion evidence, and to further develop the record as appropriate. *See Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020)("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *rep. rec. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

**C. The ALJ Failed to Properly Evaluate the Objective Evidence of Plaintiff's Physical Impairments.**

With regard to physical impairments, Plaintiff contends that the ALJ's RFC determination that she was capable of performing light work failed to properly consider medical records supportive of Plaintiff's description of back pain, nerve pain, and fibromyalgia symptoms that made it difficult to sit or stand for extended periods. (Dkt. No. 10 at 7-10; Dkt. No. 13 at 2.) This court agrees, and recommends remand for further consideration of the functional limitations associated with Plaintiff's physical impairments.

In reaching her determination that Plaintiff could perform the exertional and postural requirements of light work, the ALJ cited March 2020 orthopedic examination notes describing Plaintiff as being able to transition from sitting to standing without difficulty and possessing full strength in her lower extremities. (T. 18-19, 581.) The ALJ also referenced a November 2020 consultative examination report that described Plaintiff as having a normal gait, the ability to rise from a chair without difficulty, full range of motion in the cervical spine but limited range of motion in the lumbar spine, and full strength in the upper and lower extremities. (T. 18-19, 734-735.) The ALJ also expressly considered imaging reports from March 2020 showing no more than mild degenerative disc disease, along with electrodiagnostic testing showing no abnormalities in Plaintiff's lower extremities. (T. 18-19, 581, 585-586, 755.)

Although the ALJ cites these records that are suggestive of lesser physical limitations, her RFC determination omits a number of objective medical records that also appear relevant to Plaintiff's ability to perform light work. Plaintiff correctly points out that the ALJ's decision does not mention that she regularly attended prescribed physical therapy sessions between March 2020 and March 2021 for unsteady gait and pain that was attributed to fibromyalgia. (T. 599-

21

630.)  During these sessions, physical therapists consistently observed reduced strength in the hips and knees, repeated positive slump tests[4], and a leaning gait. (T. 599-600, 629, 1258, 1267-1268.)

The record also includes orthopedic notes from July 2020, January 2021, February 2021, and May 2021 showing Plaintiff was prescribed repeated epidural injections in light of positive straight leg raise test results[5] and corresponding back and leg pain. (T. 790-791, 794, 837-838.) Plaintiff testified that she had not experienced any improvement from these injections. (T. 61.) The ALJ did not discuss any of these test results or the prescribed treatment when evaluating the relevant medical opinions or Plaintiff's RFC. (T. 17-19.)

Instead of discussing these notes from treating specialists, the ALJ discounted Plaintiff's subjective allegations of pain because she has "generally undergone a conservative course of treatment" and has been able to maintain her activities of daily living. (T. 17.)  Courts within this Circuit have recognized that physical disability does not necessarily correlate with the "intrusiveness" of the recommended medical treatment.  *Shaw v. Cater*, 221 F.3d 126, 134 (2d Cir. 2000) (finding that a treating physician's recommendation of "only conservative physical therapy, hot packs, EMG testing—not surgery or prescription drugs" was not substantial evidence that claimant was not physically disabled); *Scognamiglio v. Saul*, 432 F.Supp.3d 239,

---

[4] A slump test is used to evaluate neural tissue sensitivity and is performed by having the seated patient slump forward at the thoracic and lumbar spine.  If there is no immediate pain, the therapist will have the patient drop their chin to their chest and extend one knee as much as possible.  https://www.physio-pedia.com/Slump_Test [https://perma.cc/V4KY-VQWY].

[5] Positive straight leg raise test results are typically indicative of a herniated disc in the back or compression of a nerve root.  https://www.webmd.com/back-pain/what-is-straight-leg-raise-test [https://perma.cc/4RFG-B52G].

249 (E.D.N.Y. 2020) ("A physician's recommendation of conservative treatment, in itself, does not undermine a finding of severe limitations.").

Moreover, the medical record shows that Plaintiff had been prescribed pain medication for several years and continued to receive regular epidural injections. (T. 794, 1434, 1442.)  She had undergone surgery as recently as April 2021 to address continued pelvic pain, and her physicians had raised the possibility of future surgery for back pain. (T. 60-61, 1401-1402.) Such measures go beyond those typically considered conservative treatment.  See *Scognamiglio*, 432 F.Supp. at 249 (finding ALJ mischaracterized treatment as conservative where it consisted of prescription drugs, physical therapy, and epidural steroid injections, and physicians had raised possibility of surgery); *Jazina v. Berryhill*, No. 16-CV-1470 (JAM), 2017 WL 6453400, at *6 (D. Conn. Dec. 13, 2017) ("Plaintiff's treatment regimen—which included . . . prescription drugs, and in the past included physical therapy and injections—does not appear to qualify as conservative[.]");  *C.f.*, *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order) (classifying treatment program of walking, home exercise, and stretching as "conservative"); *Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1467-DB, 2022 WL 3346930, at *8 (W.D.N.Y. August 12, 2022) (finding use of a back brace, pain medication, aqua therapy, and physical therapy is a benign therapy that can fairly be characterized as conservative).

The Commissioner correctly points out that ALJs are not required to "reconcile every conflicting shred of medical testimony,"  *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). However, it is equally true that ALJs must discuss the evidence and factors "crucial" to the disability determination with "sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)(citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)).  Put another way,

an ALJ must "build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Because the ALJ's decision excludes any discussion of evidence that might support greater physical limitations, this court's ability to perform a meaningful review of the ALJ's RFC determination is frustrated, and remand is recommended for further consideration of the evidence related to Plaintiff's physical functional limitations. *See Rosemary B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-241 (ATB), 2022 WL 11130736, at *5 (N.D.N.Y. October 19, 2022) (finding ALJ's selective citation of medical record created appearance of "cherry-picking" record and was legal error requiring remand).

 

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED;** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated:     September 6, 2023
           Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge